UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ORLEANS PARISH COMMUNICATION DISTRICT | CIVIL ACTION |
| VERSUS | NO: 11-209 |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, ET AL. | SECTION: "J" (5) |

**ORDER AND REASONS**

Before the Court are Defendants' Motion to Dismiss (Rec. Doc. 17) and Plaintiff's Opposition (Rec. Doc. 20), on supporting memoranda without oral argument. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Defendants' Motion to Dismiss (Rec. Doc. 17) should be GRANTED.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This case arises from the Federal Emergency Management Agency (FEMA)'s denial of a request for public assistance submitted by Plaintiff Orleans Parish Communication District (OPCD) for the costs of performing building activities for a 911 call center immediately following Hurricane Katrina in 2005.

1

FEMA allegedly denied OPCD's reimbursement request due to
environmental and historic preservation concerns at the
construction site.

OPCD is charged with the administration of vital public
safety communications in Orleans Parish and the administration of
the 911 system.  Hurricane Katrina completely disabled all 911
service in Orleans Parish.  OPCD initially ran a 911 call center
out of the Hyatt Hotel, but was evicted and found a site at 118
City Park Avenue for building a temporary call center.  In August
2005, following Hurricane Katrina, FEMA began administering
public assistance to repair damaged eligible facilities in
certain Louisiana parishes.  FEMA began holding "kickoff
meetings" with applicants for public assistance.  At such
meetings, FEMA emphasized National Historic Preservation Act
(NHPA) and National Environmental Policy Act (NEPA) obligations
that FEMA must comply with.  On September 12, 2005, OPCD
submitted its request to FEMA, requesting assistance related to
costs of relocation of the 911 emergency call center from the
Hyatt Hotel to the site of a more permanent, but still temporary,
facility bordering City Park Avenue (the "Interim Call Center").
The application was for reimbursement of costs of the demolition
of an abandoned building, the purchase of temporary modular

buildings, and the construction of the metal call center itself.

In October 2005, FEMA personnel held a kickoff meeting with OPCD.  FEMA alleges that the meeting pertained to the proposed Interim Call Center.  FEMA alleges that it was noted that several historic buildings were present on the site, including the Halfway House and two other buildings located on the National Register of historic buildings.  FEMA opined that it appeared the project was not eligible for assistance.  Environmental regulation concerns were noted concerning asbestos in piping in the buildings on the site, and possible risks related to underground arsenic, pesticides, and gasoline storage tanks. Plaintiff asserts that this October meeting was only for purposes of discussing the call center that was ultimately located at the Hyatt Hotel.  Plaintiff also asserts that these concerns were never communicated to OPCD as FEMA indicates they were communicated.

In November 2005, FEMA requested information from the Louisiana Department of Agriculture concerning the Interim Call Center project site.  FEMA noted that to assist in funding, it had to ensure that the site was in full compliance with all regulations, especially those addressing environmental and historic preservation issues.  Based on the Department of

Agriculture's response, FEMA raised concerns related to potential soil contaminants remaining from when one building had been owned by Orkin, a pest control company.  OPCD alleges that on or about November 15, an official with FEMA gave approval for OPCD to take necessary steps to occupy the proposed Interim Call Center site.  On November 16, FEMA staff conducted a site visit and discovered that OPCD had stripped sod, demolished two buildings, and leveled the site.

FEMA alleges that on or about November 17, it memorialized environmental concerns (arsenic, pesticides, and gasoline in the soil; a chemical plume migrating toward site borders; and litigation between building owners and past tenant Orkin regarding responsibility for contamination), archaeological concerns (discovery of ceramics, hand-finished bottles, trash, flowerpot and urn fragments, and other items of significance in the area where the chemical plume was located), historic burial concerns (potential human remains containing biological hazards consisting of surviving smallpox and cholera diseases in the soil), and additional historical concerns (eligibility of four buildings at the site for the National Register, and OPCD's demolition of the stonemason's building without FEMA's knowledge, which adversely affected the integrity of the entire Firemen's

Charitable and Benevolent Association funerary complex).[1]

On November 22, 2005, FEMA held a meeting with OPCD and informally denied the request for assistance due to OPCD's unauthorized demolition and the outstanding environmental and historic preservation concerns.  In December 2005, OPCD allegedly appealed this informal decision.[2]  In May 2006, FEMA released a project worksheet report ("PWR"), upon which basis FEMA then officially denied the request for reimbursement in June 2006.  In 2007, FEMA reviewed the PWR and project files and did not change its prior decision.  In 2008, OPCD took its first official appeal with FEMA, which was denied.  FEMA upheld its 2006 determination due to OPCD's ground-disturbing activities without the required environmental reviews, and demolition of a historic structure without FEMA or State Historic Preservation Office consultation.  OPCD appealed a second time in 2009, which appeal was denied in February 2010.  Although OPCD had provided additional documentation to argue that no environmental or historic preservation laws were violated, FEMA stated that it should have been permitted to evaluate such concerns before approval of funds.

---

[1] Plaintiff points out that "Defendants do not state to whom these memorialized concerns were conveyed."  Rec. Doc. 20, at 12.

[2] OPCD alleges that it was not an appeal, but a follow-up conversation.

Plaintiff filed the instant lawsuit seeking reimbursement for the costs of site preparation work and construction of the Interim Call Center.  Defendants moved to dismiss for lack of subject matter jurisdiction.

## THE PARTIES' ARGUMENTS

Defendants argue that none of the four bases for subject matter jurisdiction invoked by Plaintiff in its complaint apply, and thus this case must be dismissed.  Namely, FEMA is a United States agency against which claims cannot be brought absent a clear waiver of sovereign immunity, which cannot be found in any of the cited legislation.  Congress passed the Stafford Act to provide a means of assistance by the federal government to state and local governments in carrying out their responsibilities to alleviate suffering and damage resulting from disasters.  See 42 U.S.C. § 5121(b).  Implementation of the Stafford Act has been delegated to FEMA, which retains discretion in the determination of eligibility for and distribution of public assistance to affected state and local entities in such disasters.  This discretion stems from the permissive language of the Stafford Act, which expressly affirms FEMA's sovereign immunity under the "discretionary function exception" to the Act.  The exception provides:

6

> The Federal Government shall not be liable for any
> claim based upon the exercise or performance of or the
> failure to exercise or perform a discretionary function
> or duty on the part of a Federal agency or an employee
> of the Federal Government in carrying out the
> provisions of this chapter.

42 U.S.C. § 5148.

Defendants argue that FEMA's decision to deny public assistance to Plaintiff regarding the Interim Call Center falls within the "discretionary function exception," rendering Defendants immune from suit.  The Fifth Circuit has adopted the Berkovitz two-prong test[3] in determining whether a federal agency like FEMA qualifies for the exception as to certain conduct within the scope of the Stafford Act.  The first prong is satisfied when a choice or judgment is involved in the performance of the function, and that choice or judgment is not tempered by a statute, regulation, or policy that mandates a particular course of action.  The second prong is satisfied when the choice or judgment is of the kind that the discretionary function exception was intended to shield:  governmental actions and decisions based on public policy considerations.

The first prong is alleged to be satisfied because FEMA's

---

[3] St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency, 556 F.3d 307 (5th Cir. 2009) (citing Berkovitz v. United States, 486 U. S. 531, 536-37 (1988)).

7

public assistance determination regarding OPCD's request for reimbursement was a judgment that was not tempered by another law mandating a particular course of action.  Throughout the Stafford Act, permissive language is used to describe public assistance given pursuant to the Act.  The jurisprudence supports the view that FEMA's actions under the Act are discretionary, and OPCD has identified no statute, regulation, or policy that mandates FEMA to reach a particular result in eligibility and funding determinations.  Thus even if FEMA made a mistake, its decision is immune from judicial review.  Relatedly, FEMA made its decision in an effort to comply with other legislation, such as the NHPA, which requires FEMA not to provide assistance to applicants who intentionally act to significantly adversely affect certain historic properties.

Defendants argue that the second Berkovitz prong is satisfied because FEMA's public assistance determination was the type that the discretionary function exception was designed to immunize from suit.  The decision that OPCD is ineligible for reimbursement, because OPCD interdicted Defendants' efforts to comply with the NEPA and the NHPA, is the type of policy decision that is best left to federal agencies like FEMA.  Thus, it is argued, the Stafford Act does not waive FEMA's immunity.

Additionally, the three other asserted bases for jurisdiction are
not legally sound.  The Administrative Procedures Act (APA)'s
express waiver of immunity does not apply when, as here, FEMA's
action was committed to agency discretion by law, namely, the
Stafford Act discretionary function exception.  Nor does the
Declaratory Judgment Act provide jurisdiction because it does not
establish an independent jurisdictional basis.  Finally, Title 28
U.S.C. § 1346, which lists several instances in which the United
States can be sued, provides no applicable waiver of sovereign
immunity.

Plaintiff's opposition begins by pointing out that at this
Rule 12(b) stage, there are factual issues in dispute.  Plaintiff
points out numerous alleged factual errors in the Defendants'
supporting memorandum.  OPCD's actions were consistent with the
environmental plan already in place at the time of Katrina.  The
Interim Call Center site was fully compliant with all federal,
state, and local environmental laws and regulations.  OPCD's
activities had no adverse impact on the site.  The Halfway House
was not affected, the demolished building was not eligible for
National Register inclusion, and the "Phase I Archaeological
Report" contradicts FEMA's findings regarding artifacts and
unmarked graves.  Any historic buildings that were on the

property were completely unaffected by construction.  The
environmental concerns were ultimately found to be unwarranted,
as shown in a Louisiana Department of Environmental Quality
letter dated August 29, 2008.

Plaintiff argues that the Court does have subject matter
jurisdiction, under both the APA and the Stafford Act.  The "zone
of interest" analysis for standing under the APA only requires a
plausible relationship to the general policies underlying the
Stafford Act, which is present in this case.  The APA has an
amendment that under Fifth Circuit precedent eliminates the
sovereign immunity defense where the action against the United
States seeks equitable relief on the grounds that an agency like
FEMA acted or failed to act in an official capacity or under
color of legal authority.  Additionally, the Stafford Act does
not bar all litigation against FEMA.  OPCD alleges that FEMA gave
prior approval for the construction of the Interim Call Center,
and that it later revoked its approval and denied reimbursement
of costs.  Therefore, this case does not fall within the
"discretionary function exception," but is a suit to enforce a
mandatory function, potentially a "detrimental reliance" claim
under state law.  Only the discretionary decision as to whether
to supply a service is immunized.  But here, OPCD has alleged

that FEMA reneged on its previous exercise of discretion to pay reimbursement costs.  Thus, Plaintiff argues, any allegation by FEMA to the contrary creates a factual issue that precludes the granting of the motion to dismiss.

**DISCUSSION**

**A. Legal Standard**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'"  Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005).  The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss.  Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011).  The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6).  United States v. City of New Orleans, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, __U.S.__, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations.  Iqbal, 129 S. Ct. at 1949-50.

## B. Subject Matter Jurisdiction

Federal agencies, such as FEMA, are shielded from suit by sovereign immunity, absent an applicable waiver of immunity.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  The Stafford Act does not contain an express waiver, and, further, its discretionary function exception immunizes the government from suit as to certain disaster relief claims.  St. Tammany Parish, ex rel. Davis, 556 F.3d at 318.  Thus the threshold issue is whether the Stafford Act's discretionary function exception applies.

Where a plaintiff sues the government pursuant to the Federal Tort Claims Act (FTCA), the APA, or another statute of

general applicability, if the discretionary function exception applies, it clearly immunizes the government from suit.  Id. at 318.  The scope of a "discretionary" function under the Stafford Act exception is the same as that under the FTCA discretionary function exception.  Id. at 319.  There are two elements required for the exception to apply.  First, the act must be discretionary in nature, meaning that it involves an element of judgment or choice, which is not tempered by a federal statute, regulation, or policy specifically prescribing a course of action.  Id. at 323.  Second, the judgment or choice must be "'of the kind that the discretionary function exception was designed to shield.'"  Id. (quoting United States v. Gaubert, 499 U.S. 315, 322-23 (1991)).  The exception was designed to "'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,' . . . 'only governmental actions and decisions based on considerations of public policy.'"  Id. at 323-24 (quoting Gaubert, 499 U.S. at 323).

As to the first element, with regard to the Stafford Act's grant of authority to FEMA to fund debris removal from private property, the Fifth Circuit has found that the permissive language of the Act indicates "that government approval of

13

assistance for debris removal is discretionary." <u>Id.</u> at 324.
Indeed, the Stafford Act's provisions that authorize FEMA to
provide disaster relief public assistance are couched in terms of
mere authorization, rather than imperative obligation. <u>See,
e.g.</u>, 42 U.S.C. § 5172(a)(1)(A) ("The President **may** make
contributions to a State or local government for the repair,
restoration, reconstruction, or replacement of a public facility
damaged or destroyed by a major disaster and for associated
expenses incurred by the government . . . .") (emphasis added);
42 U.S.C. § 5170 ("[T]he President **may** declare under this chapter
that a major disaster or emergency exists.") (emphasis added); 42
U.S.C. § 5170a ("In any major disaster, the President **may**"
provide certain assistance) (emphasis added); 42 U.S.C. §
5170b(a) ("Federal agencies **may** on the direction of the
President, provide assistance essential to meeting immediate
threats to life and property resulting from a major disaster . .
. .") (emphasis added); 42 U.S.C. § 5170c(a) ("The President **may**
contribute up to 75 percent of the cost of [certain] hazard
mitigation measures . . . .") (emphasis added); 42 U.S.C. §
5192(a) ("In any emergency, the President **may**" provide certain
federal emergency assistance) (emphasis added).  The Court finds
that FEMA's eligibility determination regarding reimbursement of

14

OPCD for costs incurred in connection with the Interim Call Center site was a discretionary judgment under the Stafford Act. Under the statutory framework, the decision was committed to the agency's discretion, and OPCD points to no statute or regulation that tempered that discretion or mandated a certain result.

As to the second element, the Fifth Circuit has held that "funding decisions related to the extent of debris removal that is necessary to protect improved property, public health, and safety are exactly the type of public policy considerations that § 5148 shields from judicial scrutiny." St. Tammany Parish, ex rel. Davis, 556 F.3d at 325. The court further elaborated that eligibility determinations and decisions to distribute limited funds are the exact types of policy decisions that meet the second prong of the discretionary function exception test. Id. See also Freeman v. United States, 556 F.3d 326, 341 (5th Cir. 2009) ("[D]ecisions regarding the feasibility, safety, and benefit of mobilizing federal resources in the aftermath of a national disaster are grounded in social, economic, and public policy.") (citation omitted).

FEMA's eligibility determination regarding reimbursement for Interim Call Center construction costs clearly involved policy choices. FEMA considers historic preservation and environmental

concerns in deciding when, where, to whom, and how much public
assistance should be given to local governmental entities like
OPCD for the reconstruction of damaged public facilities like the
911 call center.  These are policy choices involving
considerations of public health and safety, and the Court finds
that such eligibility and distribution determinations are the
types of decisions that Congress intended to shield from judicial
review.  It is of no moment that OPCD argues that FEMA's historic
preservation and environmental concerns were baseless or
misguided.  If FEMA's discretionary policy decision could become
subject to judicial scrutiny due to its lack of merit, this would
eviscerate the rule that the decision is immune from judicial
review.  Therefore, the Court holds that FEMA's decision to deny
funding for the Interim Call Center was a discretionary function,
and thus there is no waiver of sovereign immunity providing this
Court with jurisdiction over OPCD's claims.

Because the Stafford Act discretionary function exception
applies, it bars any claims, whether brought under the APA or
some other basis.  St. Tammany Parish, ex rel. Davis, 556 F.3d at
326 n.13.  Although the APA contains an express waiver of
immunity allowing suit against federal agencies, this waiver does
not apply where agency action is committed to agency discretion

by law, as is the case with FEMA's eligibility and disbursement determinations regarding the Interim Call Center.  See Armstead v. Nagin, 2006 WL 3861769, at *5 (E.D. La. Dec. 29, 2006 ) (citing to 5 U.S.C. § 701).  Therefore, the Court has no subject matter jurisdiction over OPCD's claims regarding the eligibility and funding denial made by FEMA.

Plaintiff in its opposition seeks to clarify that its complaint challenges not a discretionary act, but a mandatory one.  Namely, it alleges that once FEMA exercised its discretion to approve funding for the Interim Call Center, FEMA became bound to follow through.  There is language in the Stafford Act supporting such a contention.  Once the federal agency has obligated itself to provide funding, "the Federal share of assistance under this section *shall* be not less than 75 percent of the eligible cost of repair, restoration, reconstruction, or replacement . . . ."  42 U.S.C. § 5172(b)(1) (emphasis added). Plaintiff argues that there is a factual issue precluding the granting of the motion to dismiss.  Namely, OPCD argues that FEMA actually had already determined that OPCD's site construction was eligible for funding, and that FEMA later reneged on this position.  FEMA in its motion clearly alleges to the contrary. Thus FEMA and OPCD have contrary views as to whether FEMA

exercised its discretion to determine that OPCD was eligible to receive the requested reimbursement.

For the purposes of a Rule 12(b)(6) motion, the court accepts all well-pleaded facts as true. Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003). However, where the motion to dismiss is for lack of subject matter jurisdiction under Rule 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" Krim, 402 F.3d at 494. Plaintiff's complaint alleges that "on or about November 11, 2005, Dennis Moffett, a senior public assistance specialist with FEMA, gave FEMA approval for the District to take the necessary steps to occupy the third proposed site located at 118 City Park Avenue." Rec. Doc. 1, at 7. The complaint further alleges that Plaintiff relied upon approval given by FEMA to make immediate arrangement for demolition of certain buildings and removal of certain materials from the call center site. Id. Therefore, Plaintiff argues in its opposition, the suit challenges FEMA's refusal to execute a mandatory function—reimbursement of costs *after* FEMA had already made a discretionary choice to approve OPCD's occupation of the Interim Call Center site.

18

Plaintiff cites several judicial decisions in support of its theory that its complaint brings claims pertaining to FEMA's mandatory function to provide reimbursement in accordance with its prior funding approval.  However, these cases are inapposite because they only hold that where a federal agency chooses to undertake a discretionary act, it is not thereafter immune from suit on subsequent negligence in performing the act.  For example, in Wiggins v. U.S. Through Dept. of Army, 799 F.2d 962 (5th Cir. 1986), the court recognized that once a discretionary decision is made to supply a service, an FTCA claim may be brought concerning "negligent actions of the government beyond the discretionary decision."  Id. at 966 (citing to Indian Towing Co. v. United States, 350 U.S. 61 (1955)).  The present case does not fall within this description because there is no allegation of negligent performance of a discretionary act that FEMA allegedly chose to perform.  Rather, Plaintiff alleges that FEMA, once choosing to approve funding for the Interim Call Center, thereafter violated a mandatory duty.

OPCD does not cogently state the provision of law by which reimbursement became obligatory, other than a suggestion that OPCD "detrimentally relied" upon FEMA's alleged initial

approval.[4]  Accepting Plaintiff's allegation as true that the
FEMA public assistance specialist gave approval to OPCD to occupy
the site, the issue is whether, under the Stafford Act, this
constituted an exercise of FEMA's discretion that bound it to
later provide reimbursement to OPCD.  Regarding public assistance
project administration, federal regulations provide application
procedures for states and local entities that seek public
assistance in the wake of a federal disaster such as Hurricane
Katrina:

> (e) Grant approval.
>
> (1) Before we obligate any funds to the State, the
> Grantee must complete and send to the Regional
> Administrator a Standard Form (SF) 424, Application for
> Federal Assistance, and a SF 424D, Assurances for
> Construction Programs. After we receive the SF 424 and
> SF 424D, the Regional Administrator will obligate funds
> to the Grantee based on the approved Project
> Worksheets. The Grantee will then approve subgrants
> based on the Project Worksheets approved for each
> applicant.
>
> (2) When the applicant submits the Project Worksheets,
> we will have 45 days to obligate Federal funds. If we
> have a delay beyond 45 days we will explain the delay
> to the Grantee.

44 C.F.R. § 206.202(e).  Clearly, then, the question of when FEMA
becomes obligated to disburse disaster relief funds revolves

---

[4] Specifically, the Plaintiff cites Louisiana Civil Code Article 1967,
which imposes an obligation on a promisor where the promisee detrimentally
relies on the promise.  See LA. CIV. CODE art. 1967.

around the preparation of "Project Worksheets."  Therefore,
OPCD's allegation in its complaint that the FEMA official gave
approval for OPCD to take necessary steps to occupy the proposed
Interim Call Center site cannot establish, as a matter of law,
that FEMA thereby obligated itself to provide funding.
Plaintiff's complaint does not allege that, prior to the alleged
approval, a project worksheet had been prepared as required by
Title 44 C.F.R. § 206.202(e).

     The complaint further alleges that OPCD "made application
for funds from FEMA" after the statement was made by the FEMA
official, and the complaint then states that "[i]n June 2006,
FEMA denied [OPCD's] application for these funds . . . ."  Rec.
Doc. 1, at 8.  Thus accepting these pleaded facts as true, OPCD
has not pleaded the violation of a mandatory function by FEMA.
The regulations provide that *before* FEMA obligates any public
assistance disaster funds to a state, the state (as "grantee")
must apply, and that only thereafter will FEMA obligate funds
based on *approved* "Project Worksheets."  44 C.F.R. §
206.202(e)(1). Plaintiff's theory advanced in its opposition is
not viable in light of the complaint, which alleges that OPCD

applied for FEMA funds, only to have that application denied.[5]
The cited regulation clearly requires approval of the formal
application before FEMA becomes obligated to provide funding.
Thus this Court has no subject matter jurisdiction over the
claims presented in this case due to the Stafford Act
discretionary function exception.

    For the foregoing reasons, **IT IS ORDERED** that Defendants'
Motion to Dismiss (Rec. Doc. 17) be and is hereby **GRANTED**, and
that this case be and is hereby **DISMISSED WITH PREJUDICE**.

---

    [5] In a footnote in its opposition, Plaintiff attempts to argue that it
is asserting a claim "similar to a claim of detrimental reliance defined by
Louisiana Civil Code article 1967." Rec. Doc. 20, at 20 n.9.  The Fifth
Circuit has recognized as a "forceful argument" that Louisiana's claim for
detrimental reliance sounds in contract, not in tort.  Stokes v.
Georgia-Pacific Corp., 894 F.2d 764, 770 (5th Cir. 1990).  See also Durio v.
Metro. Life Ins. Co., 653 F. Supp. 2d 656, 666 (W.D. La. 2009) (citing to
Stokes, 894 F.2d at 770) (stating that a claim for detrimental reliance under
article 1967 is based on promissory estoppel, not tort).  Therefore,
jurisdiction under the FTCA would not be proper.  Even if the detrimental
reliance claim did sound in tort, it would be subject to the FTCA
misrepresentation exception.  See Santoni v. Fed. Deposit Ins. Corp., 677 F.2d
174, 179 (holding that claims based on promissory estoppel sounded in tort for
misrepresentation and therefore were barred by the FTCA).  Nor would there be
a waiver of sovereign immunity, and therefore jurisdiction, under the "Little
Tucker" Act, 28 U.S.C. § 1346(a)(2).  Jablon v. U.S., 657 F.2d 1064, 1070 (9th
Cir. 1981) ("We therefore conclude that the government has not waived its
sovereign immunity with regard to a promissory estoppel cause of action.").

New Orleans, Louisiana this 12th day of October, 2011.

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE